IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   15-cv-00258-WYD-KMT

MEHB KHOJA, and
RODOLFO GUIZAR REYES as the assignee of TEXAS SNACKS, LLC, on behalf of themselves and all other similarly situated persons,

    Plaintiffs,

v.

DPD SUB, INC., a Colorado corporation, and
DPI SUB, INC. a Colorado corporation,

    Defendants.

---

# ORDER

---

THIS MATTER comes before the Court on Defendants Doc Popcorn Franchising, LLC's and Doc Popcorn, LLC's (hereinafter referred to as "Defendants" or "Doc Popcorn") Motion to Dismiss or, in the Alternative, to Stay the Proceeding and Compel Arbitration (ECF No. 6), filed March 9, 2015.  Plaintiffs filed a response and Defendants filed a reply in support of its motion.  After carefully considering the pleadings submitted by both parties, I find that the arbitration agreement is valid and enforceable and thus, this matter should be stayed pending arbitration pursuant to 9 U.S.C. § 3.

I.    INTRODUCTION

On February 6, 2015, Plaintiffs filed the instant action on behalf of themselves and "the class ... of past and current franchisees of Doc Popcorn, which is more than

fifty (50) individuals or entities." (Compl. ¶ 6). Plaintiffs seek a declaratory judgment "regarding the validity of the dispute resolution provision in the franchise agreement and for money damages resulting from Doc Popcorn's intentional and/or negligent misrepresentations and omissions ...." (Compl ¶ 8). Plaintiffs assert claims for: (1) declaratory judgment; (2) fraud or fraud in the inducement; and (3) negligent misrepresentation. Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or, in the alternative, stay these proceedings pending the outcome of arbitration.

II.     BACKGROUND

Plaintiffs are individuals who signed Franchise Agreements with Defendants. Doc Popcorn is a Colorado corporation that offered and sold Doc Popcorn franchises to franchisees. In its Complaint, Plaintiffs allege that Doc Popcorn uses a website to market its franchises. (Compl. ¶¶ 1-11). "To be a franchisee of Doc Popcorn costs a substantial amount of money. Plaintiffs and the other class members paid an initial franchise fee of between $27,500.00 and $59,500.00, a 'store creation fee' of between $3,500.00 and $15,000.00, and construction/equipment fees of up to $130,000.00." (Compl. ¶ 16). Plaintiffs allege that "[d]espite the representations made by Doc Popcorn on its website and in its Franchise Disclosure Document and Agreement and the substantial investment required and paid by franchisees, Doc Popcorn franchises are, for the most part, unprofitable and struggle to stay in business." (Compl. ¶ 17). "In Doc Popcorn's franchise model, Doc Popcorn is the only participant making money." (Compl. ¶ 17). Plaintiffs further allege that "Doc Popcorn's financial model is

fundamentally flawed because it knowingly makes unwarranted and unrealistic assumptions to calculate customer capture rates and, based on such calculations, advises franchisees that outlets in malls and other locations with slow traffic are viable locations." (Compl. ¶ 17).

The Franchise Agreement, entered into by Doc Popcorn and each Plaintiff individually, contained a section entitled "DISPUTE RESOLUTION," which reads, in relevant part:

> … all controversies, disputes, or claims…arising out of or related to: (i) this Agreement or any other agreement between the parties or any provision of the agreements; (ii) the relationship of the parties to this Agreement; (iii) the validity of this Agreement or any other agreement between the parties or any provision of the agreements; or (iv) any part of the System, shall first be submitted by the parties to non-binding mediation before the Judicial Arbiter Group ("JAG") located in Denver, Colorado to be conducted at the offices of Doc Popcorn or JAG in Denver, Colorado.

(ECF No. 6, Ex. A, ¶ 15.2). This "DISPUTE RESOLUTION" (hereinafter referred to as "DR") section of the Franchise Agreement also states that if mediation is ultimately unsuccessful, the parties are required to pursue their claims pursuant to the following arbitration clause:

> …if any claim is not resolved by mediation, it shall be submitted for final and binding arbitration to the Denver, Colorado office of JAG on demand of either party. Such arbitration proceedings shall be conducted in Denver, Colorado, and shall be heard by one arbitrator in accordance with the then current Commercial Arbitration Rules of JAG.

(ECF No. 6, Ex. A, ¶15.2). The DR section further provides that "[a]ll Claims between Doc Popcorn and Franchisee shall be governed by the Federal Arbitration Act ("FAA") and no procedural arbitration issues are to be resolved pursuant to any state statutes,

regulations or common law." (ECF No. 6, Ex. A, ¶15.5). "Except to the extent governed by the FAA, ... this Agreement shall be interpreted under the laws of the state of Colorado and any dispute between the parties shall be governed by ... the substantive laws of the state of Colorado, which laws shall prevail if there is any conflict of law." (ECF No. 6, Ex. A, ¶15.5). Each Plaintiff agreed to engage in arbitration "on an individual basis only." (ECF No. 6, Ex. A, ¶15.4).

III.   ANALYSIS

Turning to the case at hand, in its motion, Doc Popcorn argues that this case should be dismissed for lack of subject matter jurisdiction, or in the alternative, stayed pending arbitration. Doc Popcorn claims the since both Plaintiffs individually entered into a valid arbitration agreement that applies to the claims asserted in this case, the matter should be dismissed or stayed pending arbitration. Plaintiffs disagree and contend that the DR section in the Franchise Agreement is illusory, thus unenforceable.

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *Todd Holding Co., Inc. v. Super Value Stores, Inc.*, 744 F. Supp. 1025, 1026 (D. Colo. 1990). Thus, the court must satisfy itself of subject matter jurisdiction before proceeding to the merits of a claim. *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1309-10 (10th Cir. 1998). "[T]he burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). "Mere conclusory allegations of jurisdiction are not enough." *United States, ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1196, 1160 (10th Cir. 1999).

When a party moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the attack can be either a facial attack to the allegations of the complaint or a factual attack.  *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).  Where there is a facial attack, the Court must look to the factual allegations of the Complaint.  *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971).  In a factual attack, the court may consider matters outside the pleadings, and the motion is not converted to a motion for summary judgment.  *Id.*; *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992).  "The trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56."  *Osborn v. United States*, 918 F.2d 724, 730 (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

"Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*  "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue."  *Osborn*, 918 F.2d at 730.

The FAA provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract of transaction ... shall be valid, irrevocable, and enforceable ..." 9 U.S.C. § 2.  Section 3 of the FAA "also provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3; and for orders compelling arbitration when one party has failed, neglected, or refused to comply

with an arbitration agreement, § 4." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (citing 9 U.S.C. §§ 3, 4).

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 4. A motion to compel arbitration based on an arbitration agreement is governed by 9 U.S.C. § 4 which reads as follows:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. ... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. Accordingly, the Supreme Court has held that when the parties to an agreement dispute whether arbitration is required by that agreement, a federal court may only resolve the issue when the parties dispute the making of the arbitration agreement itself. *Id.*; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). "[A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp.*, 388 U.S. at 404.

This Court has previously held that when the dispute involves the formation of the arbitration agreement itself, courts apply "a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (citing *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262 (D. Kan. 2003)). The defendant bears the initial burden of setting forth sufficient evidence to demonstrate that an enforceable arbitration agreement exists. *Id.* Then,

the burden shifts to the plaintiff to show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.*  If the plaintiff fails to meet his or her burden, then arbitration is appropriate for all disputes covered by the arbitration agreement.  However, if the plaintiff establishes a genuine issue of material fact, a jury trial "on the existence of the arbitration agreement is required." *Id.*

An arbitration agreement is a contract, the interpretation of which is a matter of law.  *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003).  Here, pursuant to the Doc Popcorn Franchise Agreement, I apply the laws of the state of Colorado.  Turning to my analysis, I must first review whether Doc Popcorn satisfied its initial burden by submitting sufficient evidence to demonstrate that an enforceable arbitration agreement exists.  Doc Popcorn has submitted evidence in the form of the Franchise Agreements executed by both Plaintiffs and the Franchise Disclosure Documents, which were provided to both Plaintiffs.  Given the legal standard set forth in both *Stein* and *SmartText Corp.*, I find that after reviewing the afore-mentioned evidence, Doc Popcorn has met its initial burden of demonstrating an enforceable arbitration agreement.  The burden now shifts to the Plaintiffs to show that there is a genuine issue of material fact as to the making of the agreement.  *Stein*, 396 F. Supp. 2d at 1213.

Plaintiffs argue that the DR section of the Franchise Agreement is illusory, thus, unenforceable because Doc Popcorn is not bound by its terms.  The Tenth Circuit has held that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."  *Dumais v. Am. Golf Corp.*,

299 F.3d 1216, 1219 (10th Cir. 2002). Here, the applicable DR section includes a provision entitled "Alternative Dispute Resolution," which provides:

> Without limiting any of the foregoing, Doc Popcorn reserves the right, at any time, to create a dispute resolution program and related specifications, standards, procedures and rules for the implementation thereof to be administered by Doc Popcorn or its designees for the benefit of all franchisees conducting business under the System. The standards, specifications, procedures and rules for the dispute resolution program shall be made part of the Library of Operating Manuals, and Franchisee shall comply with all the standards, specifications, procedures and rules in seeking resolution of any claims, controversies or disputes with or involving Doc Popcorn or other franchisees, if applicable under the program. If Doc Popcorn, in its sole discretion, makes the dispute resolution program mandatory, Franchisee, Franchisee's owners, and Doc Popcorn agree to submit any claims, controversies or disputes arising out of or regarding this Agreement (and Attachments, Exhibits and Riders) or the relationship created by this Agreement for resolution in accordance with the dispute resolution program prior to, or in lieu of, seeking resolution of such claims, controversies or disputes in the manner described in this Article 15 (but the provisions of Section 15.6 concerning Doc Popcorn's and Franchisee's right to seek relief in a court for certain actions including for injunctive or other extraordinary relief shall not be superseded or affected by this Section) or if such claim, controversy or dispute relates to another franchisee, Franchisee and Franchisee's owners agree to participate in the program and submit any such claims, controversies or disputes in accordance with the program's standards, specifications, procedures and rules, prior to seeking resolution of such claims by any other judicial or legally available means.

(ECF No. 6, Ex. A, ¶15.8). Plaintiffs construe the foregoing provision as giving Doc Popcorn the right to create a dispute resolution program to replace the entire DR section, in its sole discretion. (Resp. at 9). On the other hand, Doc Popcorn claims that its discretion is limited in that "[u]nder section 3.12 of the Franchise Agreement, Doc Popcorn can only modify the arbitration clause by changing its 'Library of Operating Manuals,' accomplished by the requirement that it 'notify [Plaintiffs] about changes in writing by fax, mail, electronic mail or posting on Doc Popcorn's website on the

Internet."  (Reply at 4).

While this is a close call, I am guided by the detailed analysis set forth in *Vernon v. Qwest Communications Intern., Inc.*, 925 F. Supp. 2d 1185 (2013), where this court found that Qwest's Subscriber Agreement, which provided, "Qwest is not obligated to give you notice of changes to this Agreement before it becomes effective," to be enforceable and not illusory.  *Id.* at 1193.  After discussing the pertinent case law, the district judge in *Qwest* reasoned that because the Subscriber Agreement clarified that Qwest may "at any time, effective upon posting to www.qwest.com/legal or any written notice to you, including email ... modify the Service and/or any of the terms and conditions of this Agreement....," this language required enough notice to render the agreement "not fatally illusory."  *Id.* at 1193-94.  Similarly, here, I find that the phrase set forth in Paragraph 15.8 of the DR provision, "[t]he standards, specifications, procedures and rules for the dispute resolution program shall be made part of the Library of Operating Manuals, and Franchisee shall comply with all the standards, specifications, procedures and rules in seeking resolution of any claims, controversies or disputes with or involving Doc Popcorn or other franchisees" limits Doc Popcorn's ability to modify the DR section without notice.  (ECF No. 6, Ex. A, ¶15.8).  Thus, I reject Plaintiffs' argument that the DR section is illusory.  S*ee Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 173–74 (5th Cir. 2004) (declining to follow *Dumais* where the contracts in question gave the defendant companies the right to change the terms upon notice to the customer of the proposed changes); *Hancock v. American Telephone and Telegraph Company, Inc.*, 2011 WL 3626785, at \*6–7 (W.D. Okla. 2011) (rejecting a challenge to

an arbitration provision as illusory after noting that the service provider was required to give customers advance notice of any material changes and that customers could reject any proposed change by terminating their service); *Lumuenemo v. Citigroup, Inc.*, 2009 WL 371901, at *5 (D.Colo. 2009) (holding that an arbitration agreement was not illusory where it gave the drafting party the right to modify the agreement under certain restrictions).

Accordingly, I find that Plaintiffs have failed to demonstrate a triable issue of fact as to the validity of the DR provision. Thus, I find that an enforceable arbitration agreement exists between Plaintiffs and Doc Popcorn. This matter is stayed pending arbitration.

IV.     CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion to Dismiss or, in the Alternative, to Stay the Proceeding and Compel Arbitration (ECF No. 6), is **DENIED IN PART AND GRANTED IN PART.** The motion is denied to the extent it requests dismissal of this action. The motion is granted to the extent it requests that this matter be stayed pending arbitration. It is

FURTHER ORDERED that pursuant to 9 U.S.C. §§ 3-4, the parties shall proceed with arbitration in accordance with the Franchise Agreement. This Court shall retain jurisdiction until arbitration has been completed. It is

FURTHER ORDERED that since the length of the arbitration process is uncertain, I find that this case should be administratively closed pursuant to

D.C.COLO.LCivR 41.2 with leave to be reopened for good cause shown.  If no action is taken to reopen this case before **September 18, 2016**, the case will be dismissed without prejudice without any further notice to either party.

Dated:  September 29, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge